UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| CIRON BENTAY SPRINGFIELD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>M. MOORE, Chief Deputy Warden; et al.,<br><br>　　　　　Defendants.<br>_____/ | No. C 14-5676 LB<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>[Re: ECF No. 1] |

**INTRODUCTION**

Ciron Bentay Springfield, an inmate currently at the California State Prison in Lancaster, has filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A. This order determines that the complaint states claims upon which relief may be granted and requires the Marshal to serve process on the two defendants.

**STATEMENT**

Mr. Springfield has mental health needs. *See* ECF No. 1-1 at 56. His complaint concerns the conditions of confinement at the Salinas Valley Psychiatric Program ("SVPP"), where he was sent for mental health care in late December 2012. The complaint alleges the following:

Mr. Springfield arrived at SVPP on December 27, 2012 for mental health treatment. He was

scheduled for an institutional classification committee ("ICC") hearing on January 4, 2013. Mr. Springfield provided a written statement for the ICC hearing in which he stated that he wanted to be temporarily assigned to single cell status so that he could participate in the needed mental health care programs.[1] ECF No. 1 at 6; ECF No. 1-1 at 23-24.

At the ICC hearing on January 4, 2013, chief deputy warden Moore was the chairperson and correctional counselor Meden was the recorder. The ICC dismissed a social worker's recommendation to lower Mr. Springfield's custody classification from "MAX" to "Close A" or "Close B" in accord with instructional memoranda in Mr. Springfield's file. ECF No. 1 at 6, 8. The decision of Mr. Moore and Mr. Meden (as the ICC members) to keep Mr. Springfield him at MAX custody and in a particular housing category caused Springfield to be denied access to mental health care. As a result of defendants' actions, Mr. Springfield "was confined to his cell on cuff status; whereby, he was deprived of access to mental health services (i.e., structured group therapy, yard, community counsel meetings, one-on-one sessions with his clinician, and all out of cell movement consisted of the plaintiff being shackled and cuffed in (mechanical waist restraints, and leg restraints)." ECF No. 1 at 6-7 (parentheses in original).

Mr. Springfield also did not receive access to the yard for approximately three months, "which aided" his "decompensation." *Id.* at 7.

The defendants retained Mr. Springfield's MAX custody designation "per a rescinded validation

---

[1]Understanding Mr. Springfield's allegations is aided by a quick summary of one of his exhibits that shows what occurred earlier in 2012, when he was sent to the Intermediate Care Facility - Vacaville Psychiatric Program ("ICF-VPP") for mental health care. Early in 2012, he was not approved for participation in a mental health program at ICF-VPP due to his MAX custody designation "based on gang validation process and high placement score." ECF No. 1-1 at 25. A committee re-evaluated his "program viability" in June 2012, and made changes to allow him to participate in necessary mental health treatment. *Id.* Specifically, an ICC in June 2012 decided to "temporarily reduce" Mr. Springfield's custody designation to "Close A" "for DMH/ICF cell programming purposes only," and noted that the designation would "revert back to MAX custody upon DMH discharge pending gang validation process." *Id.* This change in custody designation permitted his participation in a mental health care program without restraints at ICF-VPP in mid-2012. Mr. Springfield's complaint in the present action is largely based on the failure of the ICC at SVPP to take similar steps when he arrived at SVPP at the end of 2012.

chrono (CDC 128-B2); and used a validation package void of sufficient evidence and reliable information, thus, continuing the plaintiff illegal confinement which imposed 'atypical and significant hardship on the plaintiff in relation to ordinary incidents of prison life,' by deliberately denying the plaintiff access to mental health treatment." *Id.*

According to one of his exhibits, another ICC hearing was held on February 8, 2013, at which the ICC elected to reduce his custody "to Close A and [afford] him the opportunity to receive the maximum benefit of the DSH program." ECF No. 1-1 at 20. This ICC also approved him for a double cell. *Id.*

## ANALYSIS

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The complaint has adequately alleged an Eighth Amendment claim against the two defendants based on an alleged denial of mental health care. However, there are deficiencies in the complaint with regard to several other claims that must be cured in an amended complaint.

I. **Eighth Amendment Claim - Denial of Mental Health Care**

Deliberate indifference to a prisoner's serious medical needs amounts to the cruel and unusual punishment prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the prisoner's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834

1 (1994). For the objective prong of the deliberate indifference test in a medical care claim, the
2 plaintiff "must show a serious medical need by demonstrating that failure to treat a prisoner's
3 condition could result in further significant injury or the unnecessary and wanton infliction of pain."
4 *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation and internal quotation marks
5 omitted). "[T]he requirements for mental health care are the same as those for physical health care
6 needs." *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). For the subjective, or
7 "deliberate indifference" prong, the plaintiff must show "(a) a purposeful act or failure to respond to
8 a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680
9 F.3d at 1122 (citation and internal quotation marks omitted).

10     The complaint alleges that decisions made by the defendants Moore and Meden at the ICC
11 hearing caused Mr. Springfield not to receive the mental health care he needed, even after he asked
12 for a custody status and housing assignment that would permit him to receive that care. Liberally
13 construed, the complaint states a cognizable § 1983 claim against defendants Moore and Meden for
14 a violation of Mr. Springfield's Eighth Amendment rights. *See generally Lopez v. Smith*, 203 F.3d
15 1122, 1132 (9th Cir. 2000) (prison officials could be liable for Eighth Amendment violation based
16 on intentional interference with prescribed medical treatment). The complaint is ambiguous as to
17 whether defendants refused to let Mr. Springfield enter the mental health care program, or whether
18 their housing decisions had the indirect effect of preventing him from making the most of the mental
19 health care program in which he was allowed to participate. *Compare* ECF No. 1 at 7
20 ("defendants['] denial of access to mental health treatment proliferated the plaintiff
21 decompensation") *with id.* at 10 (Moore "[d]eliberately allowed the plaintiff to decompensate on cuff
22 status, when he interfered/
23 delayed treatment once prescribed"). Giving the *pro se* complaint the liberal construction to which it
24 is entitled, a cognizable claim is stated under either factual scenario.

25 **II. Due Process Claim**

26     The complaint alleges that defendants' decision on January 4, 2013 imposed an "'atypical and
27 significant hardship on the plaintiff in relation to the ordinary incidents of prison life.'" Docket # 1 at
28 7. The quoted phrase is a well-known passage from a key Supreme Court case on the due process

C 14-5676 LB
ORDER     4

rights of prisoners, *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and presumably is an effort to allege a due process claim. Although the court can see the Eighth Amendment claim that arises from defendants' alleged actions, no due process claim is apparent in the allegations of the complaint.

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.

When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. Due process also requires that there be some evidence to support the prison officials' decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Toussaint*, 801 F.2d at 1104-05.

Although these due process requirements exist for the placement of a prisoner in administrative

segregation when it amounts to an atypical and significant hardship, the complaint does not indicate that Mr. Springfield was placed in administrative segregation as a result of the January 4, 2013 ICC hearing. If he was already in administrative segregation before he arrived at SVPP, prison officials were not required to hold a new hearing just to continue to retain him in ad-seg at the new facility. One of his exhibits indicates that he had been put in ad-seg long before he arrived at SVPP. *See* ECF No. 1-1 at 25 (6/6/12 hearing report stating Mr. Springfield was in "ASU based on pending gang validation status"). Once prison officials have provided a prisoner due process and decided to put him in ad-seg, they do not need to hold a new hearing every time he is moved to a new facility while he remains in ad-seg.

Insofar as Mr. Springfield is attempting to allege that he had due process rights in connection with the decision to classify him as Max custody or Close A custody, the law does not support him. The liberty in question generally is not protected by the Due Process Clause because the deprivation of a correct classification or custody designation cannot be characterized as one of "real substance," i.e., it does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, or "inevitably affect the duration of [a] sentence," *id.* at 487. And the changes in conditions relating to classification and reclassification do not implicate the Due Process Clause itself. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Dagget*, 429 U.S. 78, 88 n.9 (1976)) (no constitutional right to particular classification). Prisoners also have no constitutional right to incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Mr. Springfield had no due process right to a particular classification or to a particular cell placement.

Leave to amend will be granted so that Mr. Springfield may attempt to allege a due process claim. In his amended complaint, Mr. Springfield must allege facts showing the existence of a protected liberty interest, must allege facts showing the manner in which the defendants deprived him of that protected liberty interest, and must identify the procedural protections of which he was deprived. It is not sufficient for him to merely quote phrases from the *Sandin* case, as those are legal principles and do not show how Mr. Springfield was deprived of a constitutionally protected right.

### III.   Outdoor Exercise Claim

As noted earlier, there are two requirements for an Eighth Amendment violation based on prison conditions: (1) the deprivation must be, objectively, sufficiently serious; and (2) the defendant must have acted or failed to act with deliberate indifferent to a substantial risk to the prisoner's health or safety.  *See Farmer*, 511 U.S. at 834, 836.  "'[O]rdinarily the lack of outdoor exercise for extended periods is a sufficiently serious deprivation' for Eighth Amendment purposes."  *Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010) (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993).

The complaint's allegation that Mr. Springfield was denied access to the yard for about three months adequately pleads a sufficiently serious deprivation for an Eighth Amendment claim.  The Eighth Amendment claim is deficient, however, because it does not allege that this deprivation resulted from anyone's deliberate indifference.  If Mr. Springfield wishes to pursue an Eighth Amendment claim for a denial of outdoor exercise, he must allege what each defendant did or failed to do that caused him to be denied outdoor exercise, including any facts suggesting that the defendant(s) acted or failed to act with deliberate indifference to his need for outdoor exercise.  He also must state the dates during which he was denied outdoor exercise to give defendants a fair opportunity to respond to his claim.

### CONCLUSION

For the foregoing reasons, the complaint is **DISMISSED WITH LEAVE TO AMEND**.  The amended complaint must be filed no later than **March 6, 2015**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page.  Mr. Springfield is cautioned that his amended complaint will supersede existing pleadings and must be a complete statement of his claims, except that he does not need to plead again any claim the court has dismissed without leave to amend.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).   If Mr. Springfield does not file an amended complaint, the action will proceed with consideration of only the Eighth Amendment claim for the denial of mental health care.

**IT IS SO ORDERED.**

Dated: February 4, 2015

_____
LAUREL BEELER
United States Magistrate Judge